COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Humphreys and Senior Judge Overton


YASHEKA DeHART

MEMORANDUM OPINION*

v.      Record No. 0057-03-2

PER CURIAM
OCTOBER 28, 2003

RICHMOND DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

(Robin M. Morgan; Davis & Morgan, P.A., on brief), for appellant.

(Kate D. O'Leary; Patricia D. Barnett, Guardian *ad litem* for the
infant child; Office of the City Attorney, on brief), for appellee.


Yasheka DeHart appeals a decision of the trial court terminating her parental rights to her son, age three, pursuant to Code § 16.1-283(C). On appeal, mother contends the evidence was insufficient to support the termination. Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence established that in May 2000, DeHart gave birth to a son. DeHart was fifteen years old, in the custody of the Richmond Department of Social Services, and living in foster care. Shortly after

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the child's birth, DeHart's foster mother informed the Department that she could no longer care for DeHart and her child. The Department placed DeHart at Alpha House, a residential program for pregnant teenagers and teenage mothers, where the Department offered DeHart anger management, individual and group counseling, and programs designed to teach independent living skills.

Joy Marshall, the director of Alpha House, testified that on the day DeHart and the child were placed at Alpha House, the child was dressed in filthy clothing and had not been bathed. Marshall observed multiple dirty baby bottles about DeHart's room. During DeHart's stay at Alpha House, Marshall continued to have concerns regarding DeHart's ability to care for the child. One month after this placement, DeHart appeared at the Department, announced she would not return to Alpha House, and requested that the child be placed in the Department's custody. DeHart would not give a specific reason for refusing to return to Alpha House.

The Department's initial foster care plan for the child had a goal of return home. The plan required DeHart to remain in her placement, attend school, maintain visitation, and participate in counseling. Between July 2000 and June 2001, DeHart had seven different placements, failed all of her school classes, failed to maintain visitation with the child, and refused to cooperate with necessary psychological testing.

The Department's second foster care plan had a goal of placement with relatives. Although the Department investigated four relatives, one failed to respond to Department inquiries, one lost acceptable housing, one proved to be unrelated to DeHart, and the fourth said she was unable to care for DeHart and the child.

Wilhemenia Cunningham became DeHart's foster care worker in January 2002. Between that time and October 2002, DeHart had five different foster care placements. Cunningham arranged for DeHart's placement at Unity Home, a residential facility for teenage mothers, where

she was offered anger management, behavior management, parenting classes, recreational services, and independent living services. DeHart's placement at Unity Home would have allowed her to be placed with her child; however, she left the facility after three days. DeHart later returned to the facility but was terminated from the program based on her behavior before the child could be placed there with her.

Psychologist Caroline Campbell testified as an expert in child psychology and parental evaluations. After a clinical assessment and mental status evaluation of DeHart, Campbell found her unable to properly parent and care for the child. She concluded DeHart was unable to comprehend the child's significant developmental delays and lacked the emotional maturity and stability necessary for consistent, reliable parenting.

The trial judge found that DeHart had failed to remedy the conditions which led to the child's foster care placement. See Code § 16.1-283(C). He ruled that the termination of DeHart's parental rights was in the child's best interests.

## Analysis

### I.

In pertinent part, Code § 16.1-283(C)(2) provides that "[t]he residual parental rights of a parent . . . of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child" and that the following conditions exist:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care

placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

Because "'[r]easonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case," Ferguson v. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992), we have held that the trial judge "must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. at 338-39, 417 S.E.2d at 4.

DeHart argues that the Department failed to provide reasonable and appropriate services to assist her. The record reveals, however, the Department offered her extensive opportunities and services to enable her to remedy the conditions which led to the child's placement. The Department placed DeHart in residential facilities for teenaged mothers which offered counseling services, independent living services, job readiness training, and an appropriate educational setting. DeHart refused to participate in the offered services and did not cooperate with the Department. The trial court found that the Department had fulfilled its duties under the statute. "The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64. We will not disturb this finding because the record indicates that it was not plainly wrong or without evidence to support it. Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

II.

DeHart also asserts the trial court erred by finding her failure to remedy the conditions leading to the child's foster care placement was without good cause.

DeHart acknowledges that her "oppositional behavior and difficulty in remaining in placements after her son's birth contributed to [the child's] initial placement and continuation in

foster care."  She contends, however, that "her immaturity and life experiences" provide good cause for her failure to remedy the conditions leading to the child's foster care.  Although she proposes "that time and maturity alone [may be able to] resolve the causes of [the child's] foster care placement," the child had already spent over two years in foster care at the time of the termination hearing.

"While age of the parent or parents is doubtless an appropriate consideration in assessing 'good cause' in the context of Code § 16.1-283(C), it is not a circumstance which prevails over the best interests of the child."  Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 541 (1995).  Furthermore, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming [her] responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990) (citation omitted).  The record supports a finding that DeHart's inability to remedy the conditions that led to the child's placement in foster care was without "good cause."

### III.

DeHart further argues the trial court erred by finding the termination of her parental rights was in the child's best interests.

> In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

The evidence established that DeHart pursued an unstable lifestyle, incompatible with the child's needs and reflective of an indifference to his interests. This conduct spanned the child's entire life, despite the best efforts and substantial resources of the Department to assist and redirect DeHart in her behavior and parenting skills. Additionally, the child suffers from developmental delays that DeHart is unable to discern. Guided by the child's best interests, the trial court found that the Department proved by "clear and convincing evidence" that termination of DeHart's residual parental rights was the appropriate statutory remedy. Code § 16.1-283(C). The record supports this finding.

Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

Affirmed.